UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-21599-Civ-Middlebrooks
(08-21104-Cr-Middlebrooks)
MAGISTRATE JUDGE P. A. WHITE

VASHAUN ISSAC YOUNG,          :

      Movant,          :

v.                            :          REPORT OF
                                  MAGISTRATE JUDGE FOLLOWING
UNITED STATES OF AMERICA   :          EVIDENTIARY HEARING

      Respondent.          :

_____

I.   Introduction

Vashawn Issac Young has filed a pro se motion to vacate
pursuant to 28 U.S.C. §2255, attacking his conviction and sentence
for conspiracy to possess with intent to distribute 50 grams or
more of cocaine base and 5 kilograms or more of cocaine, entered
following a guilty plea in case no. 08-21104-Cr-Middlebrooks.

This case has been referred to the undersigned for
consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and
Rules 8 and 10 of the Rules Governing Section 2255 Proceedings in
the United States District Courts.

The court has reviewed the movant's initial motion with
supporting memorandum (Cv-DE#1), the government's response (Cv-
DE#7) to this court's order to show cause, the movant's reply
thereto (Cv-DE#8), the government's supplement to its response.
(Cv-DE#13), the Presentence Investigation Report (PSI), and all
pertinent portions of the underlying criminal file.

This court, recognizing that the movant was proceeding pro se,

afforded the movant liberal construction pursuant to <u>Haines v.</u> <u>Kerner</u>, 404 U.S. 419 (1972). In his initial motion (Cv-DE#1), the movant raises the following claims:

1. The movant was denied effective assistance of counsel when his attorney failed to perfect an appeal. (Cv-DE#1:4).

2. The movant was denied effective assistance of counsel when his attorney failed to object to a sentencing guideline enhancement for possession of a firearm during the commission of the offense. (Cv-DE#1:8).

3. The movant was denied effective assistance of counsel when his attorney failed to object to the court's ultimate findings at sentencing, thus waiving any claims of trial court error. (Cv-DE#1:10-11).

## II. <u>Procedural History</u>

The procedural history of the underlying criminal case reveals that on December 11, 2008, the federal grand jury, by way of Indictment, charged the movant with conspiracy to possess with intent to distribute 50 grams or more of cocaine base and 5 kilograms or more of cocaine, in violation of 21 U.S.C. §841 (a)(1), all in violation of 21 U.S.C. §846 (Count 1) and possession with intent to distribute 5 grams or more of cocaine base and a detectable amount of cocaine and marijuana, in violation of 21 U.S.C. §841(a)(1). (Count 25). (Cr-DE#3).

On May 27, 2009, the movant, by way of a negotiated written plea agreement and a factual proffer, pleaded guilty to Count 1. (Cr-DEs#383,384,385,387).

A PSI was prepared wherein the movant's offense level was set at 34. (PSI¶57). His offense level was increased by two levels because a dangerous weapon was possessed. (PSI¶58). However, his offense level was reduced by three levels due to the movant's timely acceptance of responsibility. (PSI¶¶64,65). Ultimately, his base offense level was set at 33. (PSI¶66). It was further determined the movant had one criminal history point and a criminal history category of I. (PSI¶70). Based on a total offense level of 33 and a criminal history category of I, the guideline imprisonment range was 135 to 168 months. (PSI¶104). No objections were filed thereto.

On July 21, 2009, the movant appeared for sentencing wherein the court imposed a sentence of 135 months, followed by 5 years of supervised release and $100 special assessment. (Cr-DE#489). The Clerk entered judgment on July 27, 2009. (Cr-DE#500). A timely pro se notice of appeal was filed. (Cr-DE#518). Likewise, the movant filed a motion to appoint counsel, which was subsequently denied by the court which included an order directing defense counsel to confer with the movant regarding the appropriate course of action in the matter. (Cr-DEs#519,559). Thereafter, on November 5, 2009, the Eleventh Circuit Court of Appeals dismissed the appeal for want of prosecution because the movant had failed to pay the $450 docketing and $5 filing fees to the district court and file a Transcript Order Form within the time affixed by the rules. (Cr-DE#651). This motion to vacate was timely filed on May 14, 2010. (Cv-DE#1).

III. Standard of Review

Section 2255 provides federal prisoners with an avenue for relief under limited circumstances:

3

> A prisoner in custody under sentence of a
> court established by Act of Congress claiming
> the right to be released upon the ground that
> the sentence was imposed in violation of the
> Constitution or laws of the United States, or
> that the court was without jurisdiction to
> impose such sentence, or that the sentence was
> in excess of the maximum authorized by law, or
> is otherwise subject to attack, may move the
> court which imposed the sentence to vacate,
> set aside or correct the sentence.

28 U.S.C. §2255.

Thus, a federal prisoner may only obtain relief under §2255 if his sentence (a) was imposed in violation of the Constitution or federal laws, (b) was imposed by a court without jurisdiction to do so, (c) was in excess of the maximum permitted by the law, or (d) is otherwise subject to attack. 28 U.S.C. §2255; Graziano v. United States, 83 F.3d 587 (2d Cir. 1996), citing Knight v. United States, 37 F.3d 769 (1st Cir. 1994); United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995); Belford v. United States, 975 F.2d 310 (7th Cir. 1992), overruled on other grounds by Castellanos v. United States, 26 F.3d 717 (7th Cir. 1994).

<u>Procedural Bar Principles</u>

It appears that all claims, with exception of claim one, as listed above, could have been, but were not raised on direct appeal. A claim is procedurally barred if a movant fails to raise it on appeal. There are three types of issues that a §2255 motion cannot raise: (1) issues that were raised on direct appeal, absent a showing of changed circumstances; (2) nonconstitutional issues that could have been but were not raised on direct appeal; and (3) constitutional issues that were not raised on direct appeal, unless the section 2255 petitioner demonstrates cause for the

procedural default as well as actual prejudice from failure to appeal. <u>Belford v. United States</u>, 975 F.2d 310 (7th Cir. 1992), <u>overruled on other grounds by</u> <u>Castellanos v. United States</u>, 26 F.3d 717 (7th Cir. 1994).

In order to overcome the bar, the movant must show cause for the default and actual prejudice, <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977), or a fundamental miscarriage of justice, <u>Engle v. Isaac</u>, 456 U.S. 107 (1982). No such showing has been made here.

Regardless, a claim of ineffective assistance of counsel may constitute cause for failure to previously raise the issue. <u>United States v. Breckenridge</u>, 93 F.3d 132 (4th Cir. 1996). Attorney error, however, does not constitute cause for a procedural default unless it rises to the level of ineffective assistance of counsel under the test enunciated in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984); <u>Murray v. Carrier</u>, 477 U.S. 478, 488 (1986). Here, as will be discussed <u>infra</u>, the movant cannot succeed as to claims two and three, as listed above, because he cannot satisfy the <u>Strickland</u> test, so that those claims which could have been, but were not raised on direct appeal, are thereby barred from review in this collateral proceeding.

<u>Applicable Legal Principles</u>

A. <u>Guilty Plea Principles</u>

It is well settled that before a trial judge can accept a guilty plea, the defendant must be advised of the various constitutional rights that he is waiving by entering such a plea. <u>Boykin v. Alabama</u>, 395 U.S. 238, 243 (1969). Since a guilty plea is a waiver of substantial constitutional rights, it must be a

voluntary, knowing, and intelligent act done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. Brady v. United States, 397 U.S. 742, 748 (1970). See also United States v. Ruiz, 536 U.S. 622, 629 (2002); Hill v. Lockhart, 474 U.S. 52, 56 (1985); Henderson v. Morgan, 426 U.S. 637, 645 n. 13 (1976). To be voluntary and knowing, (1) the guilty plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005); United States v. Mosley, 173 F.3d 1318, 1322 (11th Cir. 1999).

After a criminal defendant has pleaded guilty, he may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only raise jurisdictional issues, United States v. Patti, 337 F.3d 1317, 1320 (11th Cir. 2003), cert. den'd, 540 U.S. 1149 (2004), attack the voluntary and knowing character of the guilty plea, Tollett v. Henderson, 411 U.S. 258, 267 (1973); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992), or challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, United States v. Fairchild, 803 F.2d 1121, 1123 (11th Cir. 1986). To determine that a guilty plea is knowing and voluntary, a district court must comply with Rule 11 and address its three core concerns: "ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." Id. See United States v. Frye, 402 F.3d 1123, 1127 (11th Cir. 2005)(per curiam); United States v. Moriarty,

429 F.3d 1012 (11th Cir. 2005).[1]

In other words, a voluntary and intelligent plea of guilty made by an accused person who has been advised by competent counsel may not be collaterally attacked. <u>Mabry v. Johnson</u>, 467 U.S. 504, 508 (1984). A guilty plea must therefore stand unless induced by misrepresentation made to the accused person by the court, prosecutor, or his own counsel. <u>Mabry</u>, 467 U.S. at 509, <u>quoting</u>, <u>Brady v. United States</u>, 397 U.S. at 748. If a guilty plea is induced through threats, misrepresentations, or improper promises, the defendant cannot be said to have been fully apprised of the consequences of the guilty plea and may then challenge the guilty plea under the Due Process Clause. <u>Mabry</u>, 467 U.S. at 509. <u>See also</u> <u>Santobello v. New York</u>, 404 U.S. 257 (1971). The general principles of law with regard to guilty pleas are equally applicable for pleas of *nolo contendere*. <u>North Carolina v. Alford</u>, 400 U.S. 25, 37 (1970).

### B. <u>Ineffective Assistance of Counsel Principles</u>

Because the movant asserts in his petition that trial counsel rendered ineffective assistance, this Court's analysis begins with the familiar rule that the Sixth Amendment affords a criminal

---

[1]In <u>Moriarty</u>, the Eleventh Circuit specifically held as follows:

> [t]o ensure compliance with the third core concern, Rule 11(b)(1) provides a list of rights and other relevant matters about which the court is required to inform the defendant prior to accepting a guilty plea, including: the right to plead not guilty (or persist in such a plea) and to be represented by counsel; the possibility of forfeiture; the court's authority to order restitution and its obligation to apply the Guidelines; and the Government's right, in a prosecution for perjury, to use against the defendant any statement that he gives under oath.

<u>Id.</u>

defendant the right to "the Assistance of Counsel for his defense."
U.S. CONST. amend. VI. To prevail on a claim of ineffective
assistance of counsel, a habeas petitioner must demonstrate both
(1) that his counsel's performance was deficient, and (2) a
reasonable probability that the deficient performance prejudiced
the defense. Strickland v. Washington, 466 U.S. 668, 687, 694
(1984). In assessing whether a particular counsel's performance was
constitutionally deficient, courts indulge a strong presumption
that counsel's conduct falls within the wide range of reasonable
assistance. Id. at 689. This two-part standard is also applicable
to ineffective-assistance-of-counsel claims arising out of a guilty
plea. Hill v. Lockhart, 474 U.S. 52, 57-59 (1985).

Generally, a court first determines whether counsel's
performance fell below an objective standard of reasonableness, and
then determines whether there is a reasonable probability that, but
for counsel's unprofessional errors, the result of the proceeding
would have been different. Padilla v. Kentucky, ___ U.S. ___, ___,
130 S.Ct. 1473, 1482, 176 L.Ed.2d 284 (2010). In the context of a
guilty plea, the first prong of Strickland requires petitioner to
show his plea was not voluntary because he received advice from
counsel that was not within the range of competence demanded of
attorneys in criminal cases, while the second prong requires
petitioner to show a reasonable probability that, but for counsel's
errors, he would have entered a different plea. Hill, 474 U.S. at
56-59. If the petitioner cannot meet one of Strickland's prongs,
the court does not need to address the other prong. Dingle v. Sec'y
for Dep't of Corr., 480 F.3d 1092, 1100 (11th Cir. 2007); Holladay
v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000).

However, a defendant's sworn answers during a plea colloquy
must mean something. Consequently, a defendant's sworn

representations, as well as representation of his lawyer and the
prosecutor, and any findings by the judge in accepting the plea,
"constitute a formidable barrier in any subsequent collateral
proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). See
also Kelley v. Alabama, 636 F.2d 1082, 1084 (5th Cir. Unit B.
1981). Moreover, a criminal defendant is bound by his sworn
assertions and cannot rely on representations of counsel which are
contrary to the advice given by the judge. See Scheele v. State,
953 So.2d 782, 785 (Fla. 4th DCA 2007)("A plea conference is not a
meaningless charade to be manipulated willy-nilly after the fact;
it is a formal ceremony, under oath, memorializing a crossroads in
the case. What is said and done at a plea conference carries
consequences."); Iacono v. State, 930 So.2d 829 (Fla. 4th DCA
2006)(holding that defendant is bound by his sworn answers during
the plea colloquy and may not later assert that he committed
perjury during the colloquy because his attorney told him to lie).

As will be demonstrated in more detail infra, the movant is
not entitled to vacatur on any of the claims presented. When
viewing the evidence in this case in its entirety, the alleged
errors raised in this collateral proceeding, neither individually
nor cumulatively, infused the proceedings with unfairness as to
deny the petitioner due process of law. The petitioner therefore is
not entitled to habeas corpus relief. See Fuller v. Roe, 182 F.3d
699, 704 (9th Cir. 1999)(holding in federal habeas corpus
proceeding that where there is no single constitutional error
existing, nothing can accumulate to the level of a constitutional
violation), overruled on other grounds, Slack v. McDaniel, 529 U.S.
473, 482 (2000). See also United States v. Rivera, 900 F.2d 1462,
1470 (10th Cir. 1990)(stating that "a cumulative-error analysis
aggregates only actual errors to determine their cumulative
effect."). Contrary to the petitioner's apparent assertions, the

result of the proceedings were not fundamentally unfair or unreliable. See Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).


III. Evidentiary Hearing Claim


Construing the movant's arguments liberally as afforded pro se litigants, in **claim one**, the movant asserts that counsel was ineffective for failing to perfect an appeal, after the movant clearly demonstrated to counsel his desire to do so. (Cv-DE#1:7,8). Counsel further failed to consult with the movant regarding his appellate rights. (Id.). The claim was not conclusively refuted by the record, and warranted further evidentiary findings. At the March 31, 2011 evidentiary hearing, testimony was taken from the movant, his criminal defense counsel, Roderick Vereen, Esq. and investigator, Reginald Hope.


A. Failure to File Requested Direct Appeal


The law is clear that counsel's failure to file a direct appeal after being requested to do so by his client results in a per se constitutional violation of the movant's Sixth Amendment right to counsel, which entitles the movant to an appellate proceeding. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) ("we have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable"); United States v. Stanton, 2010 WL 3705964 (11th Cir. 2010)(quoting Flores-Ortega, supra.).


There is a presumption of prejudice "with no further showing from the defendant of the merits of his underlying claims when the violation of the right to counsel rendered the proceeding

presumptively unreliable or entirely nonexistent." <u>Roe v. Flores-Ortega</u>, <u>supra</u> at 484. A defendant need not establish that his direct appeal would have been arguably meritorious; he need only show that his counsel's constitutionally deficient performance deprived him of an appeal he would have otherwise taken--i.e., the defendant expressed to his attorney a desire to appeal. <u>Id.</u>; <u>see also</u>, <u>McElroy v. United States</u>, 2007 WL 4393955, *1 (11th Cir. 2007); <u>Gomez-Diaz v. United States</u>, 433 F.3d 788, 792 (11th Cir. 2005).

Even if a defendant contractually waived the right to appeal, counsel may be ineffective for not filing a notice of appeal when directed to by the client because the merits of an appeal are not to be considered when determining whether an out-of-time appeal should be permitted. <u>Gaston v. United States</u>, 237 Fed.Appx. 495, 497 (11th Cir. 2007). The defendant need not show that there were viable grounds for such an appeal. <u>Martin v. United States</u>, 81 F.3d 1083 (11th Cir. 1996); <u>Montemoino v. United States</u>, 68 F.3d 416, 417 (11th Cir. 1995); <u>Restrepo v. Kelly</u>, 178 F.3d 634, 641-42 (2d Cir. 1999)(holding that a habeas petitioner alleging ineffective assistance of counsel based on counsel's failure to file a requested notice of appeal need not demonstrate that his defaulted appeal would have succeeded in order to establish prejudice sufficient for habeas relief). Prejudice is presumed when counsel fails to file a notice of appeal when requested to do so by a client. <u>Gaston v. United States</u>, 237 Fed.Appx. at 496, <u>citing</u>, <u>Flores-Ortega</u>, 528 U.S. at 483.

In the case of an appeal following a guilty plea, however, the defendant is entitled to an out-of-time appeal of sentencing issues only. <u>Flores-Ortega</u>, 528 U.S. at 483. Only sentencing claims may be raised on an out-of-time appeal following a plea because "the few

grounds upon which the guilty plea may be challenged are not limited to direct appellate review, but instead are more appropriately raised in §2255 proceedings." <u>Montemoino</u> at 417. It should also be noted that "[A] waiver of the right to appeal includes a waiver of the right to appeal difficult or debatable legal issues-indeed, it includes a waiver of the right to appeal blatant error." <u>United States v. Howle</u>, 166 F.3d 1166, 1169 (11th Cir. 1999). Moreover, "a vigorous dispute about an issue during the sentencing proceedings does not preserve that issue for appeal when the terms of the appeal waiver do not except it from the waiver." <u>United States v. Bascomb</u>, 451 F.3d 1292, 1296 (11th Cir. 2006).

Although there was a limited appeal waiver in this case, the Eleventh Circuit has clarified that counsel must still file a notice of appeal if directed to do so by his client, unless the movant has waived <u>all</u> of his appellate rights. <u>See</u>, <u>Gomez-Diaz v. United States</u>, 433 F.3d 788 (11th Cir 2005). Specifically, the Eleventh Circuit held that the general rule that an attorney who disregards instructions from his client to appeal acts in a manner that is <u>per se</u> professionally unreasonable applies with equal force where a defendant has waived some, but not all, of his appeal rights. <u>Id.</u> at 794.

The movant's testimony on direct examination revealed that following the pronouncement of his sentence, he informed counsel he wanted to appeal, to which counsel replied he would. Notwithstanding his request, because counsel failed to visit the movant in prison and return his phone calls, three days following the sentencing hearing, the movant filed a <u>pro se</u> notice of appeal, explaining he felt compelled to preserve his appellate rights in light of the court's advice regarding the time period he had in which to file an appeal.

According to the movant, he was neither informed of his appellate rights nor did counsel visit him following the sentencing hearing. However, when poignantly asked whether counsel visited him after the sentencing hearing, but prior to the filing of his _pro se_ notice of appeal, the movant was unable to remember. He went as far to say that after filing his _pro se_ notice of appeal, counsel never visited him to discuss the advantages and disadvantages thereof and whether pursuance of the matter was prudent.

Former counsel, Roderick Vereen, an experienced criminal defense attorney for the past 21 years, testified the movant never directed him to file a direct appeal. Counsel explained the movant's plea agreement contained a waiver of his appellate rights. Customarily, he discusses the waiver with his clients prior to the signing thereof, which he remembers reviewing with the movant. His client, thus had a clear understanding that despite the sentence received, he was precluded from filing an appeal. The plea agreement was thereafter signed, subsequently accepted by the court and the movant was sentenced accordingly. Notwithstanding, he eventually learned a _pro se_ notice of appeal was filed.

Counsel's further remembers the court ordering him to visit the movant as a result of the _pro se_ notice of appeal. In compliance with the order, counsel visited the movant on two separate dates. The Federal Detention Center's (FDC) attorney's log book, which requires that all attorneys sign in upon entering the facility, indicating the individual or inmate they intend to see, revealed counsel visited the movant on October 23, 2009 and November 2, 2009. During these visits, counsel was accompanied by Reginald Hope, counsel's investigator, who also happened to be the movant's cousin. During the visits, counsel discussed the _pro se_ notice of appeal filed, the ramifications thereof, the signed plea

agreement, the issues the movant wanted to appeal, along with the fact that the appeal would most likely be dismissed based on procedural grounds due to the appellate waiver. Moreover, counsel discussed the movant's opportunity to provide substantial assistance to the government if he chose to do so. After the discussions concluded, the movant understood and acknowledged it would be "a waste of time" if an appeal was pursued.

Mr. Vereen clarified that although he visited the movant in compliance with the court's order, he was not hired to represent the movant on appeal. Notwithstanding, had the movant requested counsel to file an appeal, counsel would have done so. However, neither was counsel contacted during the time in which an appeal could be filed nor did the movant wish to pursue an appeal following his meeting with counsel.

Reginald Hope, a private investigator hired by the movant's attorney, recalled visiting the movant at the FDC with counsel. Regarding the movant's appellate rights, Hope remembered a conversation wherein the movant was informed either that he could not appeal or that it "wouldn't make sense." Thus, it was Hope's testimony that counsel did in fact speak to the movant, while incarcerated, regarding his appellate rights, although he believes, but is unsure, that said conversation occurred prior to sentencing.

Having carefully attended to the testimony at the evidentiary hearing, the witnesses' demeanor, and the record as a whole, the undersigned credits the testimony of movant's counsel, Mr. Vereen, that the movant did not request a direct appeal and thereafter, pursuant to the court's order, counsel consulted with the movant regarding his appellate rights. The court is not persuaded by the movant's testimony that he requested that counsel file a direct

14

appeal or that counsel never discussed the advantages or disadvantages thereof. Although the movant filed a <u>pro se</u> notice of appeal three days after his sentencing hearing, thus preserving his appellate rights, the court finds following consultation with his attorney, the movant decided to forego the pursuance thereof. Consequently, counsel was not ineffective and the movant is not entitled to an out-of-time appeal.

In sum, the undersigned does not find credible the movant's testimony that he asked his lawyer to file an appeal. Moreover, this court further finds that the movant intentionally decided to forego pursuing his appellate rights following counsel's consultation. Thus, the court finds that the movant never requested that a direct appeal be filed.

B.   <u>Duty to Consult</u>

In cases like this, where the undersigned finds the movant did not instruct counsel to file an appeal, the next question to consider, to-wit, whether counsel performed deficiently, is "best answered by . . . asking a separate, but antecedent question: whether counsel in fact consulted with the defendant about an appeal." <u>Flores-Ortega</u>, 528 U.S. at 478.

"[W]here a defendant has not specifically instructed his attorney to file an appeal, we must still determine 'whether counsel in fact consulted with the defendant about an appeal.'" <u>Thompson v. United States</u>, 504 F.3d 1203 (11th Cir. 2007)(<u>quoting Flores-Ortega</u>, 528 U.S. at 478).

Relying on the Supreme Court's definition of the term "consult," the Eleventh Circuit has held that "adequate

15

consultation requires: (1) informing a client about his right to appeal, (2) advising the client about the advantages and disadvantages of taking an appeal, and (3) making a reasonable effort to determine whether the client wishes to pursue an appeal, regardless of the merits of such an appeal." <u>Thompson v. United States</u>, 504 F.3d 1203, 1206 (11th Cir. 2007)(<u>citing</u>, <u>Frazer v. South Carolina</u>, 430 F.3d 696, 711 (4th Cir. 2005)); <u>Gomez-Diaz v. United States</u>, 433 F.3d 788, 792 (11th Cir. 2005). A defendant should be provided with enough information to either "intelligently and knowingly [] assert[] or waive[] his right to an appeal. <u>Thompson v. United States</u>, 504 F.3d 1206. If, however, two of the three elements of adequate consultation are not satisfied, then it is apparent that counsel failed to consult with the movant regarding his appellate rights. <u>Flores-Ortega</u>, 528 U.S. at 478. In this case, as already discussed, an adequate consultation was had.

At the evidentiary hearing, the court credits counsel's testimony that at least two meetings occurred at the FDC following the court's order directing counsel to consult with the movant. It is uncontroverted that the movant was extremely unhappy with the length of the sentence imposed, but counsel advised him there were no nonfrivolous grounds for an appeal, and that it was best to attempt to obtain a reduction in sentence by pursuing cooperation with the government. Moreover, counsel informed the movant of the chances his appeal would survive a motion to dismiss based on the appellate waiver.

On the record before this court, it is evident that the movant was informed about his right to appeal during the sentencing hearing. Moreover, the court finds that prior to signing the plea agreement, counsel and the movant discussed his appellate rights and the repercussions of signing an appellate waiver. Accordingly,

counsel satisfied the first prong of consultation.

Moreover, the court credits counsel's testimony that he discussed with the movant the advantages and disadvantages of taking an appeal. Counsel's testimony thereto was further corroborated by Investigator Hope's testimony. Although Hope was unable to recall whether counsel's consultation with the movant regarding the advantages and disadvantages occurred prior to or following sentencing, he is sure the conversation was had. Thus, counsel satisfied the second prong of consultation.

Following his two visits at the FDC and based upon their conversation regarding the movant's appellate rights, counsel determined the movant no longer wanted to pursue his appeal. This is further evidenced by the movant, who thus far proved to be diligent by filing a <u>pro se</u> notice of appeal soon after he was sentenced, did nothing in attempts to reinstate his appeal following the appellate court's dismissal thereof for want of prosecution. Likewise, it explains why the movant, for the two months following counsel's last visit at the FDC, neither attempted to pay the appellate fees, request the court to find him indigent or file the appropriate briefs. Accordingly, counsel also satisfied the third prong of consultation.


C.   <u>If No Consultation Had, Was Counsel Deficient</u>?

Even if the court were to assume, without deciding, that no consultation was had regarding pursuit of an appeal, the law is clear that a criminal defense lawyer, however, is not under a <u>per se</u> constitutional obligation to consult with his or her client about an appeal. <u>See</u> <u>Otero v. United States</u>, 499 F.3d 1267, 1270

17

(11th Cir. 2007)(<u>quoting</u>, <u>Flores-Ortega</u>, 528 U.S. at 479). In some cases, the Sixth Amendment requires such consultation; in others, it does not. <u>Otero v. United States</u>, 499 F.3d at 1270. "We cannot say, as a constitutional matter, that in every case counsel's failure to consult with the defendant about an appeal is necessarily unreasonable, and therefore deficient." <u>Otero v. United States</u>, 499 F.3d at 1270 (<u>quoting Flores-Ortega</u>, 528 U.S. at 479). The Supreme Court has rejected such a bright line rule in this context finding it would be "inconsistent with <u>Strickland</u>'s[1] holding that 'the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances.'" <u>Flores-Ortega</u>, 528 U.S. at 478.

The Supreme Court has explained, however, that **"counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."** <u>Flores-Ortega</u>, 528 U.S. at 480; (emphasis added). This inquiry is informed by several "highly relevant" factors, including: whether the conviction follows a guilty plea, whether the defendant received the sentence he bargained for, and "whether the plea [agreement] expressly . . . waived some or all appeal rights." <u>See Otero v. United States</u>,[2] 499 F.3d at 1270 (<u>quoting Flores-Ortega</u>, 528 U.S. at 480).

---

[1] <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

[2] In <u>Otero</u>, the Eleventh Circuit noted that "[A] criminal defense lawyer is not under a *per se* constitutional obligation to consult with his or her client about an appeal," because in "some cases, the Sixth Amendment requires consultation; in others, it does not." <u>Otero v. United States</u>, 499 F.3d at 1270.

In this case, the movant's conviction was the result of a negotiated, written plea agreement. This tends to confirm the fact that the movant was "seek[ing] an end to judicial proceedings." Flores-Ortega, 528 U.S. at 480. The movant was sentenced to the low end of the guideline range to a term of 135 months in prison. It is undisputed, however, that the movant was aware prior to sentencing that he faced the possibility of a term of up to life in prison.

To determine if a rational defendant would want to appeal, it is "relevant to ask whether there are any potential non-frivolous grounds for appeal, whether there was a guilty plea, and whether the plea expressly waived the right to appeal." Otero v. United States, 499 F.3d 1267, 1271 (11th Cir. 2007). Here, the foregoing factors weigh heavily in favor of the government. Otero v. United States, 499 F.3d at 1271. The movant negotiated a favorable plea agreement, and there appears to have been no nonfrivolous grounds for an appeal. Any challenge to the sentence on appeal would thus not have been successful. Under the totality of the circumstances present here, the Court finds no rational defendant in the movant's position would have sought to appeal. This is so given the guideline sentence imposed, which was well below the statutory maximum.

Although the movant showed an interest in filing an appeal, the record shows following counsel's consultation, the movant no longer pursued the matter. Despite the movant filing his own appeal notice, as previously narrated in this Report, the court credits counsel's testimony that the movant never demonstrated an interest in filing a direct appeal, at any time prior thereto. Thus, the court finds the movant has failed to demonstrate that, but for counsel's failure to consult with him about an appeal, he would have continued to pursue his appellate rights. See Flores-Ortega,

528 U.S. at 484.

Because no rational defendant in the movant's position would have sought an appeal, and because the Court finds the movant did not communicate to counsel a desire to appeal, the Court finds that counsel was not under a constitutional obligation to consult with the movant regarding an appeal prior to the movant's <u>pro se</u> filing thereof. Moreover, the record clearly shows that although counsel was not directed to file an appeal, counsel provided the movant adequate consultation, pursuant to the court's order, while the movant's appellate rights were still preserved.

Whether counsel at the time the district court ordered him to consult with the movant regarding the appropriate course of action was either serving as "counsel of record" or simply acting as an "officer of the court" is irrelevant with respect to this collateral proceeding as the outcome of this habeas petition remains the same. Notwithstanding, a discussion thereto follows.

During the evidentiary hearing, arguments were raised by both parties as to the status of the relationship between the movant and Mr. Vereen at the time the court issued its order directing counsel to discuss the matter with the movant. At the time, Mr. Vereen had not requested the court to be relieved from any further representation of the movant nor had he expressly notified his client that he was withdrawing from the case. However, as previously discussed, counsel's uncontroverted testimony reveals that his agreement with the movant was simply to provide his services through the penalty phase only. Although unclear whether on September 2, 2009, the date the court issued its order, counsel continued to owe his client the duty of representation, the undersigned finds he did not. See <u>Atilus v. United States</u>, 406 F.2d

694, 696 (5th Cir. 1969)(during a Section 2255 evidentiary hearing counsel testified the movant had indicated to him that he wanted to appeal, but counsel failed to do so. The court found privately engaged counsel failed to discharge the duty of representation owed to his client by taking the simple step of filing a notice of appeal, although requested to do so and failed to notify his client he was not taking this step so that the latter could protect his interests).

Counsel's uncontroverted testimony revealed he was hired for the limited purpose of representing the movant through sentencing only. Thus, pursuant to the attorney/client agreement, there was no reason for counsel to file a motion to withdraw, as the terms between counsel and his client were clear. Likewise, because the undersigned has determined no direct appeal was requested, no basis existed for counsel to have requested the court to be relieved from any further representation of the movant nor was he required to expressly notify his client that he was withdrawing from the case, since it was understood that both the movant's case and counsel's representation had concluded.[3] See Atilus, supra. The movant, neither in this collateral proceeding nor in the underlying criminal proceedings has shown that counsel continued to owe him any such duty.

Likewise, even if argued that counsel continued to owe his client the duty of representation, the movant was not prejudiced. By the movant filing his own notice of appeal, his appellate rights were preserved. Because counsel thereafter visited the movant to conduct a consultation regarding his appellate rights, while the

---

[3]It is natural that a defendant has the right to engage private counsel on such terms agreed upon between the two. See Atilus v. United States, 406 F.2d 694 (5th Cir. 1969).

21

movant's rights remained preserved, any allegations that counsel was ineffective are without merit. Although it may be argued that a prudent attorney would have filed a motion to withdraw upon conclusion of his representation, in light of their agreement, counsel in this case did not act negligently since it has been determined that no direct appeal was requested. To require an attorney to file a motion to withdraw as counsel upon conclusion of the penalty phase in every case wherein no appeal has been requested by the defendant, is overly burdensome and unreasonable.

<u>Remaining Claims</u>

In **claim two**, the movant asserts he was denied effective assistance of counsel when his attorney failed to object to a sentencing guideline enhancement for possession of a firearm during the commission of the offense. (Cv-DE#1:8). Essentially, the movant contends he never possessed a firearm but rather, he was enhanced due to co-defendant's possession thereof. (<u>Id.</u>). Counsel should have therefore objected to the enhancement requiring the government to prove by a preponderance of the evidence that the enhancement was warranted. (<u>Id.</u>:9-10).

A review of the PSI shows that the movant's base offense level was increased by two levels pursuant to U.S.S.G. 2D1.1(b)(1) (PSI¶57). Pursuant to U.S.S.G. §2D1.1(b)(1), a two level increase is added to the base offense level "if a dangerous weapon (including a firearm) was possessed." To apply the firearm enhancement of U.S.S.G. §2D1.1(b)(1) based on a co-conspirator's gun possession, the government must show by a preponderance of the evidence that "(1) the possessor of the firearm was a co-conspirator, (2) the possession was in furtherance of the conspiracy, (3) the defendant was a member of the conspiracy at the

time of the possession, and (4) the co-conspirator possession was reasonably foreseeable by the defendant." <u>United States v. Gallo</u>, 195 F.3d 1278, 1284 (11th Cir. 1999)(footnote omitted)(emphasis removed). Once the government shows that a firearm is present at the site of the charged conduct, "'the evidentiary burden shifts to the defendant to show that a connection between the firearm and the offense is clearly improbable.'" <u>United States v. Fields</u>, 408 F.3d 1356, 1359 (11th Cir. 2005)(*quoting* <u>United States v. Hall</u>, 46 F.3d 62, 63 (11th Cir. 1995)).

A review of the statement of facts reveals the movant knowingly and voluntarily agreed to the following:

> Beginning in or about May 2007, and continuing through in or about September 2008, Vashaun Young, aka 'Trick,' was supplying the Garden Apartments, 13450 Aswan Road, Opa-locka, Florida (hereinafter Gardens), which is in the Southern District of Florida, with narcotics to include powder and crack cocaine and marijuana on a regular basis. At the Gardens, **Young, employed workers to include** 'lieutenants,' or supervisors, 'bombmen,' or sellers, **'gunmen,' used for protection**, and 'lookouts,' to help warn other workers of police. Young came to Gardens almost daily to supply the lieutenants with drugs. During this time, Delvin Robinson, aka 'D,'[] Erick Hinds, aka 'E,' and Marcus Carroll, aka 'Soup,' aka 'Man,' Quinton McGhee, aka 'Q,' were the lieutenants working for Young. Vance Williams, Tauvaris Hall, Montecello Cooper, Jr. and Luther Boykin were working as a bombman [sic]. **Maurice Williams, Hollis K. Oliver, and Pernell Scott were also at the Gardens working as gunman [sic].** There were two established shifts to include a 'day-shift' from 8:00 AM to 8:00 PM and the 'night-shift' from 8:00 PM to 8:00 AM.

> * * * * *

> **Young had an apartment behind the wall of the Gardens. Mcghee and Carroll would use it as a stash house for drugs and guns.**

> * * * * *

> During this call, agents believe that Robinson and Young
> are discussing manpower and firearms issues due to recent
> law enforcement activity. **Young advised Robinson to**
> **provide a minimal amount of narcotics to the distributors**
> **and asked about firearms (I said put them out there with**
> **something small. [T]his call shows that Young not only**
> **controlled the drugs at the Gardens but he also**
> **controlled the guns.**

(Cr-DE#384)(emphasis added). Thus, the firearm possession was
reasonably foreseeable to the movant. See United States v.
Pessefall, 27 F.3d 511, 515 (11th Cir. 1994). The Eleventh Circuit
in Pessefall explained that a defendant need not know about a
co-conspirator's possession of a firearm in order for that
possession to be reasonably foreseeable, concluding that it was
reasonably foreseeable that a co-conspirator would possess a
firearm to protect a 250 kilogram offload of cocaine. See
Pessefall, 27 F.3d at 515. In this case, it is reasonably
foreseeable that at least one of the co-conspirators would possess
a firearm in connection with the ongoing drug trafficking. See,
e.g., Fields, 408 F.3d at 1359 (a connection between seized firearm
and drug conspiracy was not clearly improbable where firearms were
present at locations where coconspirators sold illegal drugs).
Here, the movant presents no evidence that a connection between the
firearm and the offense was improbable. Under these circumstances,
the court properly applied the enhancement. Consequently, no
deficient performance or prejudice has been established arising
from counsel's failure to pursue this issue. He is thus entitled to
no relief on this claim.

To the extent the movant argues he was wrongfully enhanced
because the plea agreement clearly indicated that the United States
and the defendant jointly recommended that the court neither depart
upward nor downward under the Sentencing Guidelines when

determining the advisory sentencing guideline range, this claim is without merit.

The law is clear that "sentencing enhancements do not punish a defendant for crimes of which he was not convicted, but rather increase his sentence because of the manner in which he committed the crime of conviction." United States v. Watts, 519 U.S. 148, 154 (1997)). The argument raised herein, however, has been specifically rejected by the Eleventh Circuit which has determined that nothing in United States v. Booker, 543 U.S. 220 (2005) suggests that sentencing judges cannot "continue to consider relevant acquitted conduct when applying the Guidelines in an advisory manner, 'for when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.'" Id. (quoting Booker, 543 U.S. at 233); see also, United States v. Rodriquez, 398 F.3d 1291, 1301 (11th Cir. 2005)(explaining that the use of extra-verdict enhancements in an advisory guidelines system is not unconstitutional). The Eleventh Circuit has concluded that the Watts decision therefore survives Booker. Id.

The U.S. Sentencing Guidelines provides that "[I]n determining the base level of the charged offense, the district court must consider as relevant all conduct actually undertaken by, or taken at the direction of, the defendant, §1B1.3(a)(1)(A), and in the case of a conspiracy, all acts by other participants that were both reasonably foreseeable and in furtherance of the conspiracy, §1B1.3(a)(1)(B)." See United States v. Matthews, 168 F.3d 1234, 1247 (11th Cir. 1999). Conspirators are certainly "'only accountable for [co-conspirator] conduct that was reasonably foreseeable and within the scope of the criminal activity that the defendant agreed to undertake.'" United States v. Chisholm, 73 F.3d

304, 308 (11th Cir. 1996)(*quoting* <u>United States v. Reese</u>, 67 F.3d 902, 906-08 (11th Cir. 1995)). Consequently, although "a conspirator may reasonably foresee other criminal acts, he is not accountable for those acts if they were not part of the scope of the criminal activity he agreed to undertake." <u>Id.</u> (*citing* <u>Reese</u>, 67 F.3d at 907).

In this case, the district court applied the sentencing guidelines as advisory, and found the facts to support the two level enhancement conduct by a preponderance of the evidence. (Cv-DE#13:9-11). Under these circumstances, the movant has failed to establish prejudice arising from counsel's alleged deficient performance.

In **claim three**, the movant asserts he was denied effective assistance of counsel when his attorney failed to object to the court's ultimate findings at sentencing, thus waiving any claims of trial court error. (Cv-DE#1:10-11). Specifically, the movant argues that had counsel objected to the two point enhancement for possession of a firearm at the time the court inquired whether there were any objections as to its finding of facts or in the manner sentence was pronounced, his sentence would have been 15 months shorter. (<u>Id.</u>:12).

As discussed in relation to **claim two**, <u>supra</u>, the court properly applied a two level enhancement for possession of a firearm by a co-conspirator to the movant's base offense level. As such, any argument and/or objection by counsel thereto would have been meritless. Under these circumstances, no showing has been made that counsel was deficient or that the movant suffered prejudice therefrom. <u>See</u> <u>Strickland</u>, <u>supra</u>. Consequently, the movant's generalized allegations in this collateral proceeding are clearly

26

refuted by the record.

Conclusion

For the foregoing reasons, it is recommended that the motion to vacate be denied, and this case closed.[4]

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Signed this 12th day of April, 2011.

UNITED STATES MAGISTRATE JUDGE

cc:  Franz A. Parke, Esquire
     18350 N.W. 2nd Avenue
     Suite 500
     Miami, FL 33169

     Vashaun Issac Young, Pro Se
     Reg. No. 81705-004
     FCI - Oakdale
     P.O. Box 5000
     Oakdale, LA 71463

     Anne Ruth Schultz, AUSA
     United States Attorney's Office
     99 N.E. 4th Street
     Miami, FL 33132
     Phone: 305-961-9117
     Fax: 305-530-7941

---

[4] It should be noted that arguments not raised by the movant during this collateral proceeding before a magistrate judge cannot thereafter be raised for the first time in objections to a Report and Recommendation. See Starks v. United States, 2010 WL 4192875 at *3 (S.D. Fla. 2010); United States v. Cadieux, 324 F.Supp. 2d 168 (D.Me. 2004). "Parties must take before the magistrate, 'not only their best shot but all of the shots.'" Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987)(qouting Singh v. Superintending Sch. Comm., 593 F.Supp. 1315, 1318 (D.Me. 1984)).

Richard O. I. Brown, AUSA
United States Attorney's Office
500 East Broward Blvd.
7th Floor
Ft. Lauderdale, FL 33394